```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                                :
DURO TEXTILES, LLC,                                             :
                                  Plaintiff,                    :
                                                                :         14 Civ. 705 (JPO)
                   -v-                                          :
                                                                :         OPINION AND ORDER
EDWARD W. RICCI, II,                                            :
                                  Defendant.                    :
---------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

This matter was heard by order to show cause on February 14, 2014. Plaintiff Duro Textiles, LLC ("Duro") seeks a temporary restraining order and preliminary injunction against Defendant Edward W. Ricci, II ("Ricci"), who was Duro's president and chief executive officer until his termination on January 27, 2014. Ricci opposes the relief sought by Duro and requests that this action be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

**I.      Background**

Duro is one of the country's largest dyers, printers, finishers, and distributors of textile products. In 2002, Duro was acquired by an investment fund managed by Patriarch Partners, LLC, and since that time the sole member of Duro's Board of Managers has been Patriarch's Lynn Tilton. Ricci worked at Duro since 1991 and served as its CEO beginning in 2006.

On January 27, 2014, Tilton terminated Ricci as CEO of Duro. Duro claims that Ricci has violated the terms of a binding employment agreement (the "2007 Employment Agreement") by misappropriating confidential information of the company, disparaging Duro, soliciting Duro's customers, and competing with Duro. In addition to breach of contract, Duro asserts

1

claims for breach of fiduciary duty, tortious interference with prospective contractual and business relations, and misappropriation of trade secrets.

Ricci contends that there was no binding employment agreement between him and Duro, but that the alleged agreement was merely a "draft" that was never signed by him (only initialed) and never counter-signed by Duro. He argues that this case should be transferred to the District of Massachusetts on the basis of, among other things, a forum selection clause in the alleged employment agreement. Ricci also contends that Duro cannot show a likelihood of success on any of the alleged tort claims.

The Court received the parties' submissions and heard argument on the afternoon of February 14, 2014.

## II.     Venue

Under 28 U.S.C. § 1404(a), a district court may transfer the venue of a civil action "for the convenience of the parties and witnesses, in the interest of justice . . . to any other district . . . where it might have been brought or to any district or division to which all parties have consented." "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." [1] *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). A valid forum-selection clause is a "significant" but not "dispositive" factor in § 1404(a) analysis. *Stewart*, 487 U.S. at 29-31 ("The presence of a forum-selection clause

---

[1] "[T]ransfer pursuant to § 1404(a) may be an appropriate remedy for effectuating a forum-selection clause even when the defendant does not seek that remedy. . . ." *Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 407 (S.D.N.Y. 2000).

such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."). Additional factors include: "(1) convenience of the parties; (2) convenience of witness; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327-28 (E.D.N.Y. 2006).

The Court begins by considering the convenience and relative means of the parties. Assuming arguendo that the 2007 Employment Agreement is valid, it is impossible to ignore the forum-selection clause in that agreement, which provides: "In the event of any dispute, the Executive [Ricci] agrees to submit to the exclusive jurisdiction of any court sitting in the Commonwealth of Massachusetts and Bristol County." (Agreement at 10.) The Court reads this provision to mean that the parties intended for Massachusetts courts to have exclusive jurisdiction over suits arising from the Agreement. This forum-selection clause "represents the parties' agreement as to the most proper forum" and suggests that the parties believed that Massachusetts courts were the most convenient venue for litigation. *Stewart*, 487 U.S. at 31.

Even if the 2007 Employment Agreement did not form a binding contract, the Agreement, which apparently was drafted by Duro, suggests that Duro believed that Massachusetts was the most convenient forum. Furthermore, Duro's principal place of business is in Massachusetts and Ricci argues that Massachusetts is the more convenient venue. In light

of all these factors, consideration for the convenience of the parties weighs in favor of transfer to Massachusetts.

Furthermore, by selecting Massachusetts as the contractually designated forum state, both parties have indicated that they have the means to litigate there.  Ultimately, even if Duro asserted that it would be more convenient to litigate in New York, such a consideration would not be dispositive as the Court does not find that Duro would be burdened by litigating in its home state, which it previously selected as the preferred forum.

The convenience of witnesses, attendance of witnesses, locus of operative facts, and relative ease of access to sources of proof present overlapping considerations.  Two types of evidence are likely to be relevant in this case:  evidence establishing the largely contractual duties upon which Duro brings suit, and evidence of the alleged breaches.  Evidence establishing Ricci's duties will likely be linked to Duro's Massachusetts headquarters.  Evidence of Ricci's alleged breaches will be concentrated around Ricci's office in Massachusetts, and perhaps his Rhode Island residence, and will otherwise be located with Duro's customers and potential customers.  While some of those customers may be in New York, and some witnesses, such as Tilton, are closer to New York, the totality of considerations relating to the accessibility of proof suggests that a Massachusetts forum would be appropriate.

The Court next considers the weight accorded to Plaintiff's choice of forum.  While Plaintiff filed this lawsuit in New York, that choice must be considered together with Duro's earlier choice of Massachusetts as the appropriate venue for litigation in the 2007 Employment Agreement.  Ricci's counsel suggested at the hearing that the forum-selection clause was intended to be binding on Ricci but not on Duro.  That reading of the clause is unpersuasive, because it would render the word "exclusive" meaningless in the context of the "exclusive

4

jurisdiction" to which Ricci "submits" under the 2007 Agreement. Because that clause represented Duro's private choice before this specific dispute arose, it carries at least as much weight as Duro's subsequent choice to file this action in New York.

This Court will tread lightly on the issue of comparing calendar congestion across federal districts. Both districts have busy calendars. To the extent that overall convenience will be served by transferring this matter to a Massachusetts venue, the collective efficiency of the federal courts will be increased; such a communitarian approach toward efficiency should be observed when practicable.

Next the Court considers the desirability of having the case tried by the forum familiar with the substantive law to be applied. Again, the parties' private agreement is instructive: according to its own terms the employment contract at issue "shall be governed by the laws of the Commonwealth of Massachusetts . . . ." (Agreement at 10.) Furthermore, two earlier agreements between Duro and Ricci, signed in 2001 and 2003, both also apply "the substantive law of Massachusetts." (Tilton Decl. Ex. A, B.) When sitting in diversity, "the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Associates*, 14 F.3d 114, 119 (2d Cir. 1994). This "effort to predict what would be the decision of reasonable intelligent lawyers, sitting as judges of the highest [state] court, and fully conversant with [that state's] jurisprudence" is necessarily speculative, and becomes more so when practiced by a federal court that is remote from the jurisprudence of a particular state. *Id*. In this case, Massachusetts law will apply to contract interpretation and also to the parties' dispute about whether a binding contract exists in the first place. The choice of law clauses in the various agreements (and

alleged agreements) that have consistently selected the application of Massachusetts law weigh heavily in favor of transfer to a Massachusetts forum.

Finally, the Court turns to the residual considerations including practical difficulties and how best to serve the interests of justice.  The Court has not identified practical difficulties in this case aside from the usual concerns with convenience and locating witnesses and other evidence.  In determining how best to serve the interests of justice, the Court pauses to consider the impact that any delay associated with transfer may work upon the parties.  Here, Duro has moved for a TRO and a preliminary injunction, alleging irreparable harm if relief is not granted expeditiously.  Having reviewed the parties' positions, the Court concludes that the brief delay attendant to effectuating transfer of this case to the District of Massachusetts does not undermine the strong basis for transfer.  Because the facts presented herein establish a strong basis for transfer, the Court will not further delay the transfer process by seeking additional briefing on this issue.

### III.  Conclusion

This case is hereby TRANSFERRED to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  This transfer is without prejudice to the renewal of Duro's requested relief in the transferee court.

The Clerk of the Court is directed to transfer the court file forthwith and to close the case on this Court's docket.

SO ORDERED.

Dated: February 18, 2014
      New York, New York

_____
J. PAUL OETKEN
United States District Judge